PAUL A. RIGALI (SBN 262948)
*prigali@larsonllp.com*
JERRY A. BEHNKE (SBN 180462)
*jbehnke@larsonllp.com*
CATHERINE S. OWENS (SBN 307626)
*cowens@larsonllp.com*
CHLOE N. COLEMAN (SBN 343100)
*ccoleman@larsonllp.com*
**LARSON LLP**
555 South Flower Street, Suite 4400
Los Angeles, California 90071
Telephone:(213) 436-4888
Facsimile: (213) 623-2000

Attorneys for Defendants
SAFEGUARD METALS LLC and
JEFFREY S. SANTULAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, et al.<br><br>Plaintiffs,<br><br>v.<br><br>SAFEGUARD METALS LLC AND JEFFREY S. SANTULAN,<br><br>Defendants. | CASE NO. 2:22-cv-00691 JFW (SKx)<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:        August 22, 2022<br>Time:        1:30 p.m.<br>Courtroom:   7A<br><br>Complaint Filed:   February 1, 2022<br>FAC Filed:        May 25, 2022<br>Trial Date:       November 28, 2023 |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   ARGUMENT .................................................................................................. 1

    A.   The State-Law Investment Adviser Claims Must Be Dismissed At the Pleading Stage ................................................................................ 1

        1.   Defendants Are Exempt From Registration Under the State Statutes ............................................................................... 1

        2.   The FAC Does Not Plead Any Facts that Defendants "Transacted Business In" Any of the Alleged States ................... 4

        3.   The FAC Does Not Plead Any Facts that Defendants Gave Securities Advice ......................................................................... 7

    B.   The Federal and State Fraud Claims Do Not Satisfy Rule 9(b)'s Strict Particularity Requirements ..................................................... 9

    C.   The FAC Does Not Plead Control Person Liability ............................ 14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Allstate Ins. Co. v. Countrywide Financial Corp.*,
842 F. Supp. 2d 1216 (C.D. Cal. 2012) ................................................................. 5

*Arch Ins. Co. v. Allegiant Pro. Bus. Servs., Inc.*,
2012 WL 1400302 (C.D. Cal. Apr. 23, 2012) ..................................................... 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................... 4, 5, 8

*Benefield v. Pfizer Inc.*,
103 F. Supp. 3d 449 (S.D.N.Y. 2015) ................................................................. 13

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
116 F.3d 1364 (11th Cir. 1997) ......................................................................... 13

*Brown v. Brewer*,
2008 WL 11286971 (C.D. Cal. Jan. 17, 2008) ................................................. 13

*Choi v. 8th Bridge Capital, Inc.*,
2018 WL 3469053 (C.D. Cal. July 16, 2018) ................................................... 13

*Dooms v. Federal Home Loan Mortg. Corp.*,
2011 WL 1232989 (E.D. Cal. Mar. 31, 2011)................................................... 11

*Ear v. Empire Collection Authorities, Inc.*,
2012 WL 3249514 (N.D. Cal. Aug. 7, 2012)...................................................... 4

*Epstein v. Wash. Energy Co.*,
83 F.3d 1136 (9th Cir. 1996) .............................................................................. 5

*Garretto, et al. v. Elite Advisory Serv. Inc., et al.*,
793 F. Supp. 796 (N.D. Ill. 1992).......................................................................... 6

*In re GlenFed, Inc. Sec. Litig.*,
60 F.3d 591 (9th Cir. 1995) ............................................................................... 15

*Howard v. Hui*,
2001 WL 1159780 (N.D. Cal. Sept. 24, 2001)............................................. 14, 15

*U.S. ex rel. Lee v. SmithKline Beecham, Inc.*,
  245 F.3d 1048 (9th Cir. 2001) ................................................................ 11

*Middlesex Ret. Sys. v. Quest Software Inc.*,
  527 F. Supp. 2d 1164 (C.D. Cal. 2007) ................................................. 15

*U.S., ex rel. Modglin v. DJO Glob. Inc.*,
  114 F. Supp. 3d 993 (C.D. Cal. 2015) .............................................. 11, 12

*Norman v. Northern Ill. Gas Co.*,
  2014 WL 184774 (N.D. Ill. Jan. 16, 2014) ............................................. 3

*Pico v. Cty. of Cook*,
  No. 04-3559, 2004 WL 3670968 (N.D. Ill. Dec. 14, 2004) .................... 3

*S.E.C. v. Drake*,
  2017 WL 6507766 (C.D. Cal. Dec. 18, 2017) ...................................... 11

*S.E.C. v. OwnZones Media Network, Inc.*,
  2020 WL 13311398 ................................................................................ 11

*S.E.C. v. Strong Inv. Mgmt.*,
  2018 WL 8731559 (C.D. Cal. Aug. 9, 2018) ....................................... 14

*Sams v. Yahoo! Inc.*,
  714 F.3d 1175 (9th Cir. 2013) ................................................................ 3

*Shaper v. Zadek*,
  557 F. Supp. 3d 969 (N.D. Cal. 2021) .................................................... 8

*Stucker v. Roselle*,
  37 F. Supp. 864 (W.D. Ky. 1941) ........................................................... 4

*Summit Estate, Inc. v. Cigna Healthcare of California, Inc.*,
  2018 WL 10689545 (N.D. Cal. Mar. 26, 2018) ..........................9, 12, 15

*Telesaurus VPC, LLC v. Power*,
  623 F.3d 998 (9th Cir. 2010) ................................................................... 5

*U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*,
  931 F.3d 966 (9th Cir. 2019) ................................................................... 3

*U.S. S.E.C. v. Wey*,
  246 F. Supp. 3d 894 (S.D.N.Y. 2017) .................................................. 12

*United States v. Safran Grp., S.A.*,
   2017 WL 3670792 (N.D. Cal. Aug. 25, 2017)..................................................11

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ....................................................................11, 12

*Williams v. Yamaha Motor Co. Ltd.*,
   851 F.3d 1015 (9th Cir. 2017) ............................................................................5

*Zivkovic v. S. California Edison Co.*,
   302 F.3d 1080 (9th Cir.2002) .............................................................................4

**Other State Cases**

*Pitkin v. Westport Nat. Bank*,
   2011 WL 4447253 (Conn. Super. Ct. Sept. 7, 2011) ..........................................3

*Skurnick v. Ainsworth*,
   591 So.2d 904, 904-07 (Fla. 1991)......................................................................6

**Federal Statutes**

Fed. R. Civ. P. Rule 9(b) ..........................................................................................11

Investment Advisers Act of 1940
   § 222(d)................................................................................................................1

**Other State Statutes**

Alabama Code
   § 8-6-2(18)...........................................................................................................9

Arkansas Code
   § 23-42-102(9)(C)(v)(b) ......................................................................................2

Florida Stat. Ann.
   § 517.061 .............................................................................................................3

Idaho Code Ann.
   § 30-14-102(15)...................................................................................................9

Illinois Comp. Stat. Ann.
   § 5/2.11 ................................................................................................................9

Maryland Code Ann., Corps. & Ass'ns
   § 11-101(i) ...........................................................................................................9

Mississippi Code Ann.
    § 75-71-102(15) ............................................................................... 9

Missouri Ann. Stat.
    § 409.1-102(15) ............................................................................... 9

North Carolina Gen. Stat. Ann.
    § 78C-2(1) ....................................................................................... 9

Ohio Rev. Code Ann.
    § 1707.45 ......................................................................................... 3
    § 1707.141 ....................................................................................... 3

Oklahoma Stat. Ann. Title 71
    § 1-102(17) ...................................................................................... 9

South Carolina Code Ann.
    § 35-1-102(15) ................................................................................. 9

Utah Code Ann.
    § 61-1-3(3) ....................................................................................... 1
    § 61-1-13(1)(q) ................................................................................ 9

Vermont Stat. Ann. Title 9
    § 5102(15) ........................................................................................ 9

**Other Authorities**

*In the Matter of: Acoin Trading, Sir Philip Zuka, et al.*,
    2021 WL 5763424 (Ala. Sec. Com. Nov. 17, 2021) ........................... 7

Plaintiffs' Opposition confirms that the First Amended Complaint ("FAC") must be dismissed in its entirety.[1]

I.      **ARGUMENT**

   A.      **The State-Law Investment Adviser Claims Must Be Dismissed At the Pleading Stage**

In an already sprawling case involving unique federal law questions, Plaintiffs have tacked on over twenty State law claims asserting that Defendants purportedly gave securities advice without a license in 17 different States.  *See* Claims 3, 7, 9, 12-13, 19-20, 23, 25-27, 30, 33, 37, 39, 43-44, 46, 51-53.  Each of these claims fails as a matter of law.  First, the FAC fails to plead any facts that Defendants "transacted business in" any one of the Plaintiff States. Second, the FAC fails to sufficiently allege that Defendants gave securities advice or otherwise acted as "investment advisers." Finally, many of the State law claims fail because the facts alleged in the FAC establish that Defendants are statutorily exempt from the registration requirement. For all of these reasons, the unregistered investment adviser claims must be dismissed.

   1.      Defendants Are Exempt From Registration Under the State Statutes

As an initial matter, the facts alleged in the FAC establish that Defendants are statutorily exempt from registering as an investment adviser in Alabama, Arkansas, Connecticut, Florida, Idaho, Kentucky, Maryland, Mississippi, North Carolina, Ohio, Oklahoma, South Carolina, and Vermont, and Utah.[2]  In their Opposition, Plaintiffs

---

[1] Defendants reply focuses only on points which necessitate further discussion; failure to specifically address a particular argument should not be considered a concession, abandonment, or forfeiture of the point from the opening Motion. All emphasis is added and internal citations/quotation marks are omitted, unless stated otherwise.

[2] While Defendants explain why *all* unregistered investment adviser claims must be dismissed (ECF 132 at 13), Defendants inadvertently omitted discussion of the Utah exemption. Pursuant to Utah Code Ann. § 61-1-3(3), any person exempt from licensing under Section 222(d) of the Investment Advisers Act of 1940; who has no place of business in Utah; and who "during the preceding 12-month period has had

accuse Defendants of "summarily" claiming exemption under the State statutes. ECF 138 at 16.  Not so.  Defendants set forth in detail why, based on the facts contained in the FAC, the exemptions apply.  An individual or entity is required to register as an "investment adviser" in each subject State only if: (1) the person or entity has a place of business within the State, *and* (2) the person or entity has contact with a minimum number of customers who are residents of the State, over a twelve-month period. ECF 132 at 20-23.

For example, Arkansas Code section 23-42-102(9)(C)(v)(b) provides that "'Investment adviser' does not include" any "person who has no place of business in this state if…[d]uring the preceding twelve-month period he or she has had fewer than six (6) clients who are residents of this state."  The FAC alleges that Defendants' place of business is in California. FAC ¶ 19. The FAC does not allege that Defendants have a place of business in Arkansas (they do not).  Moreover, the FAC identifies a total of only two Arkansas customers.  FAC ¶¶ 79c–79d. Thus, Defendants are exempt from the definition of "investment adviser" and Claim 7 should be dismissed.

The FAC is similarly deficient as to the other State registration claims, as detailed in Defendants' Motion to Dismiss.  ECF 132 at 20-23.  Plaintiffs do nothing to rebut these arguments and fail to address the substance of the State exemptions. ECF 138 at 16.

Instead, Plaintiffs' singular argument is that "[u]nder the States' laws a defendant bears the burden in proving that they have an available exemption or exception." *Id.*  Plaintiffs cite to statutes that they claim shift the burden to Defendants to prove that a particular exemption applies.  But many of those statutes do not apply

---

not more than five clients…who are residents of" Utah, is exempt from registration. The FAC does not allege that Defendants had a place of business in Utah and lists only *one* Utah investor, identified only as "Utah Investor # 1."  Thus, Defendants are exempt from registration in Utah, and Count 51 should be dismissed on that additional ground as well.

to the exemption from registering as an investment adviser.

For example, the Florida statute cited by Plaintiffs is titled "exempt transactions," and sets forth a series of exemptions that apply to certain securities **transactions**.   Fla. Stat. Ann. § 517.061.   In contrast, the exemption raised in Defendants' Motion and established by the facts set forth in the FAC concerns persons who are statutorily exempt from **Florida's definition of "investment adviser**." Thus, because Defendants do not argue they are exempt from the **transactions** listed in Florida Statute Section 517.061, the statute cited by Plaintiffs plainly has no application to this case.

The Ohio statute cited by Plaintiffs is similarly inapposite as it only applies to types of securities and transactions exempt under Ohio law.   Ohio Rev. Code Ann. § 1707.45. Again, this statute is irrelevant and has no bearing on the burden of proof applicable to the issue here, which is whether Defendants meets the applicable definition of "investment adviser."   *See* Ohio Rev. Code Ann. § 1707.141.

Even if Plaintiffs are correct that the exemptions are affirmative defenses, the Ninth Circuit has made clear that the court "can consider an affirmative defense on a motion to dismiss when [as here] there is 'some obvious bar to securing relief on the face of the complaint.' In other words, dismissal based on an affirmative defense is permitted when *the complaint* establishes the defense." *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 973 (9th Cir. 2019) (emphasis in original, quoting and citing *ASARCO LLC, v. Union Pac. R.R. Co.,* 765 F.3d 999, 1004 (9th Cir. 2014) and *Sams v. Yahoo! Inc.*, 714 F.3d 1175, 1179 (9th Cir. 2013)); *Pitkin v. Westport Nat. Bank*, 2011 WL 4447253, at *4 (Conn. Super. Ct. Sept. 7, 2011) (Connecticut "General Statutes § 36b–21(g)" did not preclude the court from considering "preemption prior to the summary judgment stage.").   Courts routinely dismiss State claims where, as here, the complaint demonstrates that a statutory exemption applies. *Pico v. Cty. of Cook*, No. 04-3559, 2004 WL 3670968, at *2-3 (N.D. Ill. Dec. 14, 2004); *Norman v. Northern Ill. Gas Co.*, 2014 WL 184774 at *3

(N.D. Ill. Jan. 16, 2014); *Stucker v. Roselle*, 37 F. Supp. 864, 868 (W.D. Ky. 1941) ("Since defendant's business falls squarely within the statutory exemption, his motion to dismiss the action must be sustained."). Thus, because Defendants are exempt from the States' registration requirement, Claims 3, 7, 9, 12-13, 19-20, 23, 25-27, 30, 33, 37, 39, 43-44, 46, and 51-53 must be dismissed.

> ## 2.   The FAC Does Not Plead Any Facts that Defendants "Transacted Business In" Any of the Alleged States

The investment-adviser claims also fail to plead any facts that Defendants "transacted business in" any of the subject states.[3]  Plaintiffs concede that each of the State-law investment adviser claims requires, as a distinct element, that Defendants "transacted business in" the alleged Plaintiff-State: "these States' statutes require [] that a person transact any business in that State as an IA or IAR for the registration requirement to apply."  ECF 138 at 13.  As the party bringing the claim, Plaintiffs bear the burden of pleading sufficient facts to support each element, including that Defendants transacted business in the state.[4]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To meet this burden, Plaintiffs must plead a claim "that is plausible on its face."  *Ibid.*  "Threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice."  *Ibid.*  Instead, any such "***legal conclusions...must be supported by factual allegations***."  *Id.* at 679.

---

[3] Plaintiffs assert that they adequately pleaded the "for compensation" element of the investment-adviser claims.  ECF 138 at 9.  This is not at issue in the Motion, but Defendants nonetheless dispute that allegation.

[4] Plaintiffs incorrectly state that "Defendants have the burden to prove that they did not transact 'enough' business and should be excepted or exempted from registration."  ECF 138 at 16.  Plaintiffs' effort to shift the burden onto Defendants is legally incorrect and merely an attempt to distract the Court from the shortcomings of the FAC.  *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir.2002) ("A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense."); *Ear v. Empire Collection Authorities, Inc.*, 2012 WL 3249514, at *2 (N.D. Cal. Aug. 7, 2012) ("negative defenses simply assert that the plaintiff cannot prove her case").

1    Plaintiffs baldly assert that the FAC "provide[s] 35 detailed examples of

2  unlicensed investment advice rendered to clients from California directed to various

3  states."  ECF 138 at 15 (citing FAC ¶¶ 19, 23, 79).  None of those paragraphs,

4  however, alleges a single **_fact_** that plausibly suggests that Defendants had contact with

5  any purported customers in a particular State.  ECF 132 at 16-17; FAC ¶¶ 19, 23, 79

6  (FAC has zero factual allegations that Defendants or any "sales agents" were present

7  in any state, targeted any customers in a state, had any interactions with any customers

8  in a state, or that the customers were even located in those states).  Instead, Plaintiffs'

9  FAC merely asserts that Defendants "transacted business in" each subject State—

10  which is nothing more than a pure legal conclusion.  *See, e.g.*, FAC ¶ 125.  The same

11  is true for the FAC's identification of customers as "[State Name Investor #]."  See

12  FAC ¶ 79a-ii.  That is nothing more than a bare legal conclusion.  ECF 132 at 16.  It

13  is well-settled that conclusory allegations or legal conclusions masquerading as facts

14  will not defeat a motion to dismiss.  *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140

15  (9th Cir. 1996); *Iqbal*, 556 U.S. at 678-79 ("the doors of discovery" do not unlock

16  "for a plaintiff armed with nothing more than conclusions").

17    Accordingly, because Plaintiffs fail to plead sufficient facts to allege one of the

18  elements of their claim, Defendants' Motion to Dismiss must be granted.  *See Allstate*

19  *Ins. Co. v. Countrywide Financial Corp.*, 842 F. Supp. 2d 1216, 1226 (C.D. Cal. 2012)

20  (dismissing with prejudice claims in amended complaint because certain elements not

21  properly been pled); *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1005 (9th Cir.

22  2010) (affirming dismissal of claim lacking facts to establish all elements of that

23  claim); *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1025-26 (9th Cir. 2017)

24  (affirming dismissal for failing to plausibly plead the third element of cause of action).

25    Rather than address the arguments raised in Defendants' Motion to Dismiss,

26  Plaintiffs spend much of their Opposition summarizing caselaw on what constitutes

27  "transacting business in" a state.  ECF 138 at 12-15.  While such arguments do not

28

directly address the deficiencies in the FAC,[5] Plaintiffs' sources are not persuasive and Defendants briefly address them here.

Plaintiffs cite multiple sources for the proposition that a single communication that happens to reach an individual located in a state—regardless of the communicator's awareness—constitutes "transacting business in" that state. ECF 138 at 13-15. These references have no applicability here. *Garretto, et al. v. Elite Advisory Serv. Inc., et al.* involved private-party claims in Illinois under since-repealed Wisconsin state law at the summary judgment stage. 793 F. Supp. 796 (N.D. Ill. 1992). There, the defendants made securities investments on the plaintiffs' behalf. The plaintiffs signed a "Financial Planning Agreement" with defendants. *Id.* at 798. It was undisputed that one individual plaintiff was "a Wisconsin resident at all times material to this action. . . . [And the corporate plaintiff was] a Wisconsin corporation with its principal place of business in Kenosha, Wisconsin." *Id.* at 799-800. Additionally, the president and sole shareholder of the defendant-corporation "testified at his deposition [that he acted] as an 'investment advisor providing counseling services and financial strategies to help fulfill [the] client's objectives.'" *Ibid.* Even if the reasoning in a non-binding summary judgment decision based on repealed statutes could be applied to the instant motion (it does not), *Garretto* only serves to highlight the deficiencies in Plaintiffs' FAC: there are no facts alleged that any customer of Safeguard Metals was located in any particular state.

*Skurnick v. Ainsworth* is likewise inapplicable. There, the court held, based on undisputed facts, that when a securities broker "receives an order or check by mail from a Florida resident and acts on that request by purchasing a stock or mutual funds in New York,...that transaction 'constituted a sale of securities in Florida.'" 591 So.2d

---

[5] Plaintiffs assert that Defendants complain that the FAC does not allege facts that "enough" business was transacted in each state. ECF 138 at 15-16. That is both wrong and misses the point. Defendants' entire argument is that there are **no facts** pled in the FAC to support this element of the claim; it is all legal conclusions.

904, 904-07 (Fla. 1991). Unlike *Skurnick* (which was in a distinct procedural posture), there are no factual allegations in the FAC that Defendants received anything from Florida, much less took action such as purchasing stocks, mutual funds, or securities.

Plaintiffs' reliance on *In the Matter of: Acoin Trading, Sir Philip Zuka, et al.* Admin. Order No. Cd-2021-0013, 2021 WL 5763424 (Ala. Sec. Com. Nov. 17, 2021) is likewise misplaced. Nowhere in that order does the Alabama Securities Commission conclude that the respondent was "transacting business in" Alabama.

Plaintiffs also cite to other administrative orders in California, Connecticut, Maryland, Alabama, and Mississippi from 1997 and 1998. But these sources **support** Defendants' Motion to Dismiss. Those sources state that internet communications directed generally to anyone with internet access are ***not*** considered "transacting business in" the state solely based on the fact of those communications. ECF 138 at 14-15. Thus, contrary to Plaintiffs' assertion, the simple act of "having a website and sending emails" would not constitute "transacting business in" a state and is contrary to the very sources that Plaintiffs cite. ECF 138 at 14. Moreover, to adopt such a rule would subject nearly every person with nothing more than an internet presence to liability in any and every State in the Union. This flies in the face of settled law and common sense. The fact that Plaintiffs have not pled facts that show that even one customer is located within the borders of any Plaintiff-State suggests that Plaintiffs cannot and will not be able to plead this element. This also reveals the basic truth that the Plaintiff-States are attempting to exploit the federal claims by adding over 50 State claims for which they cannot allege State-specific facts.

### 3.    The FAC Does Not Plead Any Facts that Defendants Gave Securities Advice

Finally, the investment-adviser claims should be dismissed because the FAC fails to plead that Defendants provided securities advice. Plaintiffs argue that they allege "extensively" about the securities advice allegedly provided, and yet Plaintiffs cannot identify a single concrete example from the FAC in their Opposition. ECF

138 at 10.   Indeed, the allegations in the FAC show otherwise.   For example, in paragraph 79x, Plaintiffs allege that "Fifteen other Missouri investors" purchased precious metals from Safeguard Metals.   FAC ¶ 79x.   Nowhere do Plaintiffs allege any advice given to said customers, much less advice about securities:

> 79x.   Fifteen other Missouri investors purchased precious metals through similar transactions with Safeguard Metals for a total of $1,682,463.62. At least half of the Missouri investors liquidated or sold securities in order to make the purchases recommended by Safeguard Metals.   Given the high markup and commission earned on the sales of the precious metals offered by Safeguard Metals, none of the 18 Missouri residents recorded a profits on their precious metals investments.   Interviews conducted with the other fifteen Missouri investors confirmed that the same or similar tactics were used to induce their investments in precious metals through Safeguard Metals.

At most, this allegation states that the customers purportedly liquidated securities to purchase the precious metals.   As Defendants explained in their Motion, simply liquidating securities does not presumptively mean securities advice was given. *Shaper v. Zadek*, 557 F. Supp. 3d 969, 983 (N.D. Cal. 2021) ("The fact that Defendants sold Promissory Notes to Plaintiffs does not mean that they were in the business of giving investment advice."). This same defect is present throughout the FAC; Plaintiffs merely conclude, without factual support, that Defendants gave "securities advice." *Iqbal*, 556 U.S. at 679 ("legal conclusions...must be supported by factual allegations").

Plaintiffs also argue, incorrectly, that certain State statutes do "not [even] require…that advice be rendered or relate[] to securities," in order to trigger the State's registration requirement. ECF 138 at 11.   Plaintiffs have seemingly neglected to read the full text of each statute they cite.   Citing the State statutes of Alabama, Arkansas, California, Idaho, Illinois, Maryland, Mississippi, Missouri, New Mexico, North Carolina, Oklahoma, South Carolina, Utah, and Vermont, Plaintiffs aver that it is not necessary in those States to show that securities advice was given because "IAs also include 'financial planners,' and include even persons who merely 'hold

themselves out' as investment advisers."  ECF 138 at 11.  But reading the statutory subsections in the context of the broader statute, it is plain that securities advice is a required element of the unregistered investment adviser claims.

The State statutes use the same or similar language, stating that the term "investment adviser" "includes a financial planner or other person that, as an integral component of other financially related services, ***provides investment advice to others*** for compensation as part of a business or that holds itself out as providing investment advice to others for compensation."  Miss. Code Ann. § 75-71-102(15); *see* Ala. Code § 8-6-2(18); Ark. Code Ann. § 23-42-102(9); Cal. Corp. Code. § 25009(b); Idaho Code Ann. § 30-14-102(15); 815 Ill. Comp. Stat. Ann. § 5/2.11; Md. Code Ann., Corps. & Ass'ns § 11-101(i); Mo. Ann. Stat. § 409.1-102(15); N.C. Gen. Stat. Ann. § 78C-2(1); Okla. Stat. Ann. tit. 71 § 1-102(17); S.C. Code Ann. § 35-1-102(15); Utah Code Ann. § 61-1-13(1)(q); Vt. Stat. Ann. tit. 9, § 5102(15).  The phrase "investment advice" in the context of these statutes means advice about securities, and the initial definition in each statute makes this point clear.

Indeed, the States' argument is completely at odds with the claims they are bringing; they allege that Defendants acted as investment advisers because they gave securities advice without a license.  Plaintiffs cannot now claim, by way of opposition, that they are merely asserting that Defendants presented themselves as "financial planners" who did not necessarily provide securities advice to any customers in the subject States.  *Summit Estate, Inc. v. Cigna Healthcare of California, Inc.*, 2018 WL 10689545, at *5 (N.D. Cal. Mar. 26, 2018) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

**B.**     **The Federal and State Fraud Claims Do Not Satisfy Rule 9(b)'s Strict Particularity Requirements**

Plaintiffs' fraud claims must also be dismissed.

***"Who."***   First, Plaintiffs concede that the FAC does not specifically identify any persons that allegedly made false statements.  ECF 138 at 4.  Instead, in most

instances, the FAC alleges that "Safeguard Metals"—the corporate entity—allegedly made statements, without any facts identifying *who at Safeguard Metals*. For example, at paragraphs 42-44, Plaintiffs broadly assert that "Safeguard Metals" made the following misrepresentations:

42. *Safeguard Metals* misrepresented that the government, not the investor, owns the certificates on securities and funds held in a Qualified Retirement Savings account. This is false. The beneficial owner is the true owner of an asset or security that is under a different legal name and the government does not own the certificates on securities and funds held in these accounts.

43. *Safeguard Metals* misrepresented that Qualified Retirement Savings are uninsured. In reality, investor protections and insurance are offered through the Federal Deposit Insurance Corporation and the Securities Investor Protection Corporation.

44. In 2021, *Safeguard Metals* misrepresented to customers that a change to Rule 22e-3 under the Money Market Fund Reform permits financial institutions to permanently freeze the liquidity in accounts, confiscate funds and will never pay participants back if the market fails. Furthermore, *Safeguard Metals* has maintained the goal of investment firms is "to stop you from being able to redeem your shares, or redeem the funds that you have in your retirement and stock accounts, by any means necessary."

*See* FAC ¶¶ 42-44.

This is just one example. Allegations that "Safeguard Metals" allegedly made false statements permeate throughout the entire FAC. *Id.* ¶¶ 1-11, 33-68, 81; *id.* ¶ 47 ("*Safeguard Metals* grossly misrepresented the 'operating margins'…"); *id.* ¶ 59 ("During telephone calls, *Safeguard Metals* repeatedly misstated that…"); *id.* ¶ 62 ("*Safeguard Metals* also falsely asserted '[i]f our clients are making money, that's when we make money.'…"). These allegations clearly fail to satisfy Rule 9(b)'s heightened pleading requirements. Under Ninth Circuit law:

"When a party pleads fraud against a corporation [as here], the already heightened pleading standard is *further heightened*. 'The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege *the names of the persons* who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when

1    it was said or written.'"

2    *Arch Ins. Co. v. Allegiant Pro. Bus. Servs., Inc.*, 2012 WL 1400302, at *3 (C.D. Cal.

3    Apr. 23, 2012); *U.S., ex rel. Modglin v. DJO Glob. Inc.*, 114 F. Supp. 3d 993, 1016

4    (C.D. Cal. 2015); *U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051

5    (9th Cir. 2001) (complaint failed to "identify the SmithKline employees who

6    performed the tests" as required by "Rule 9(b)'s heightened pleading requirements");

7    *United States v. Safran Grp., S.A.*, 2017 WL 3670792, at *14 (N.D. Cal. Aug. 25,

8    2017) ("Generally alleging that Defendants made written representations certifying

9    compliance with antitrust laws without specifying who made the certifications, when,

10   or in what circumstances is not specific enough under Rule 9(b).").  Plaintiffs' generic

11   allegations that "Safeguard Metals" made alleged statements therefore fail to plead a

12   claim for relief.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

13       Plaintiffs do not dispute this.  Instead, Plaintiffs argue the fraud claims are

14   sufficient because the FAC asserts, in a few paragraphs, that Safeguard made

15   statements through unnamed "sales representatives." ECF 138 at 4.  But this is plainly

16   insufficient.  *Dooms v. Federal Home Loan Mortg. Corp.*, 2011 WL 1232989, at *14

17   (E.D. Cal. Mar. 31, 2011) ("The complaint lacks precise allegations as to what

18   defendants, through **specifically** identified and authorized agents or representatives,

19   allegedly promised or represented."); *see also S.E.C. v. Drake*, 2017 WL 6507766, at

20   *5 (C.D. Cal. Dec. 18, 2017) (complaint "provide[d] ample details that allow[ed]

21   [defendant] to discern who the unnamed individuals [were in the complaint].").

22   Indeed, Plaintiffs' sole authority on this issue actually confirms Defendants' position.

23   ECF 138 at 4.  In *S.E.C. v. OwnZones Media Network, Inc.*, the court held that "[w]hen

24   an artificial entity is the alleged perpetrator of the fraud, the plaintiff '**must** allege the

25   **names** of the persons who made the allegedly fraudulent representations…'" 2020

26   WL 13311398, at *2.  The court did not hold (as Plaintiffs argue) that identifying the

27   speaker as "an OwnZones investor relations employee" satisfied Rule 9(b).  *Id.* at *5.

28   In fact, the Complaint in that case identified by name the individuals who made the

vast majority of the false statements underlying the fraud claims.  While some false statements were allegedly conveyed by "Individual F"—defined as "an OwnZones investor relations employee"—the Defendants' did not challenge the Complaint for failing to name that employee.  Thus, whether the Complaint in that case sufficiently pled the identity of "Individual F" was not at issue. Plaintiffs cite no authority supporting their claim that the FAC can merely allege that "sales representatives" committed fraud without specifically identifying who those people are.[6]

   **"When."**  Nor does the FAC sufficiently plead "when" the alleged fraud occurred, other than claiming that Defendants made purported false statements over an undefined time period.  For example, in *Summit Estate, Inc. v. Cigna Healthcare of California, Inc.*, the court "found the initial complaint failed to adequately allege time because the initial complaint merely alleged that the misrepresentations had been made 'within the past two years.'"  2018 WL 10689545, at *4.  The FAC here alleges that Defendants engaged in a fraudulent scheme "from at least October 2018" through "at least July 2021," without identifying when those alleged statements were made.  Much like the time period alleged in *Summit Estate* ("**within** the past two years"), the time period alleged in the FAC is not sufficiently defined ("from **at least** October 2017 through and continuing through **at least** July 2021") to satisfy Rule 9(b).  Courts in other circuits have reached a similar result.  *See U.S. S.E.C. v. Wey*, 246 F. Supp. 3d 894, 924-25 (S.D.N.Y. 2017) ("The vague allegations do not satisfy Rule 9(b)

---

[6] Plaintiffs make much of the fact that in *Modglin*, the court stated that it "could" be sufficient to identify the "speakers by their job titles and/or responsibilities." ECF 138 at 4.  *Modglin* does not cite Ninth Circuit authority for that premise, but instead to a Southern District of Texas case, in which the district court noted that the complaint failed to identify "physicians" that submitted false claims.  114 F. Supp. 3d 993, 1016 (C.D. Cal. 2015).  "Rule 9(b) demands that...the alleged fraud 'be 'specific enough to give defendants notice of the particular misconduct…so that they can defend against the charge." *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  Merely alleging that unnamed "sales representatives" made statements does not advance that policy goal.

because they fail to allege," *inter alia*, "when the specific transactions occurred during the four year time period"); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (Rule 9(b) satisfied when complaint sets forth "the time and place of each such statement").

Plaintiffs reliance on *Choi v. 8th Bridge Capital, Inc.* is inapposite. 2018 WL 3469053 (C.D. Cal. July 16, 2018). The court held that the complaint satisfied Rule 9(b) because it alleged a range of defined dates ("over a five-month period from April to October 2015"); it did not, as the FAC does here, allege an undefined, open-ended period of time.

***"What."*** The FAC also fails to plead "what" specific statements were allegedly made. Plaintiffs claim the FAC contains "30 pages of detailed factual allegations," and yet, ***Plaintiffs cannot offer a single example*** of an alleged false statement that is pled in the FAC. ECF 138 at 5. That is because there are none. The FAC merely asserts general categories of misstatements that were made. *See, e.g.*, FAC ¶ 81. That is insufficient to satisfy Rule 9(b). *Brown v. Brewer*, 2008 WL 11286971, at *2 (C.D. Cal. Jan. 17, 2008) (plaintiff "attempt[ed] to enumerate various aspects of the 2005 Proxy that were false and misleading" in "paragraph 130" of the complaint; court dismissed claims because plaintiff "fail[ed] to identify specific proxy statements that are alleged to have been misleading"); *Benefield v. Pfizer Inc.*, 103 F. Supp. 3d 449, 464 (S.D.N.Y. 2015) (fraud claims "fail[ed] to identify specific fraudulent statements, the particular speaker(s), or the place and date of any such statements"); *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (fraud claims must allege "precisely what statements were made in what documents or oral representations or what omissions were made").

Plaintiffs argue that they are not required to allege the specific time, customer, and other circumstances of every misrepresentation. ECF 138 at 5. But that misses the point. Defendants are not arguing that Plaintiffs must prove their case in the FAC. Rather, Defendants' entire point is that Plaintiffs fail to allege ***any*** specific statements

in the FAC.  *See, e.g.*, *S.E.C. v. Strong Inv. Mgmt.*, 2018 WL 8731559, at *6 (C.D. Cal. Aug. 9, 2018) (complaint satisfied Rule 9(b) because, unlike here, the complaint "allege[d] a number of specific examples and statistics to support the claim that 'all trades' executed by SIM and Bronson were implicated in the cherry-picking scheme.").  By failing to plead any examples of specific false statements, Defendants are left without any avenue to meaningfully respond to Plaintiffs' allegations.

*"How."*  Finally, the FAC fails to allege "how" any alleged statements were false.  Plaintiffs do not dispute that allegations about Safeguard Metals' business are merely statements about Safeguard's reputation, and therefore cannot, as a matter of law, constitute fraud. ECF 138 at 5-6.  Instead, Plaintiffs argue that they sufficiently alleged that Safeguard Metals misrepresented its operating margin to customers.  *Id.* at 5.  But the FAC makes clear that Defendants informed customers that the margins could be higher and may vary from the usual amounts—a fact that Plaintiffs conveniently ignore in their Opposition.  *See, e.g.*, FAC ¶ 52 ("SAFEGUARD METALS' OPERATING MARGIN IS USUALLY 1-23% [.] THIS MAY VARY AND EXCEED 40% BASED ON MARKET CONDITIONS.").[7]

## C.   The FAC Does Not Plead Control Person Liability

Relying almost entirely on out-of-circuit law, Plaintiffs incorrectly argue that control person liability only requires a showing of "general control" over the primary violator and "a lack of good faith, or knowing inducement of the acts constituting the violation."  ECF 138 at 23-27.  That misstates the law in this circuit. Under Ninth Circuit law, "control person" liability requires two types of control: a showing of general control over the primary violator and *specific control* over the specific transactions alleged in the complaint. *Howard v. Hui*, 2001 WL 1159780, at *3 (N.D.

---

[7] Plaintiffs admit the actual delivery exception applies to South Carolina state claim 48.  ECF 138 at 23.  Plaintiffs argue that because the FAC fails to plead when the precious metals were delivered, Defendants should be precluded from asserting the exception.  Defendants maintain the exception applies and preserve all rights to raise the defense at summary judgment, should that be necessary.

Cal. Sept. 24, 2001) ("General control over a company is not enough; plaintiffs must allege that the defendants were active in the day-to-day affairs of [the company] or that they exercised specific control over the [transactions]."). Moreover, where, as here, the plaintiff alleges fraud, the complaint "must [also] plead the circumstances of the control relationship with sufficient particularity to satisfy Rule 9(b)." *Howard, 2001 WL 1159780, at *4*; *In re GlenFed, Inc. Sec. Litig.*, 60 F.3d 591, 593 (9th Cir. 1995)* ("The district court's judgment dismissing the…'control person' liability claims…is affirmed because the complaint does not satisfy Rule 9(b)."). Thus, a complaint that does "not *explicitly* state who was controlled by whom, how they were controlled, or when the control existed," is subject to dismissal. *Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1193 (C.D. Cal. 2007)* (emphasis in original).

The FAC falls far short of these standards. The FAC merely alleges that Santulan was "initially" involved at Safeguard's inception and fails to allege that Santulan *continued* to exert general and specific control over Safeguard beyond its "initial" establishment. Indeed, the FAC does not point to a single specific transaction that involved Santulan. That alone warrants dismissal of the "control person" claims.

In their Opposition, Plaintiffs assert, for the very first time, that Santulan "made all significant business decisions *during all phases* of the company's operations." ECF 138 at 26. But that contention is not alleged in the FAC, and, in fact, contradicts the allegations in the FAC, which allege that Santulan was only "*initially*" involved. *See* FAC ¶ 71. Plaintiffs' efforts to amend the FAC by opposition must be rejected. *Summit Estate*, 2018 WL 10689545, at *5 ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

*****

For all these reasons, Defendants' Motion to Dismiss should be granted.

1

Dated:  August 5, 2022                     LARSON LLP

2

3
                                           By:   /s/ Paul A. Rigali
4                                                Paul A. Rigali
5                                                Jerry A. Behnke
                                                 Catherine S. Owens
6                                                Chloë N. Coleman
7                                           Attorneys for Defendants
                                            SAFEGUARD METALS LLC and
8                                           JEFFREY S. SANTULAN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28